## Illinois Central Railroad Co. v. Emma Griffin.

1. VERDICTS—*When they Will Not Be Disturbed.*—Where there is evidence from which the jury could properly find their verdict, it will not be disturbed, although the evidence might, in the opinion of the court, justify a different verdict.

2. RAILROADS—*Duty to Maintain Crossings.*—It is the duty of railroads in this State to construct and maintain all railroad crossings of highways and streets, and the approaches thereto, within their respective rights of way, so that at all times they shall be safe to persons and property.

3. SAME—*Chargeable With Notice.*—A railroad is chargeable with notice of all the perilous circumstances of a crossing constructed by it.

4. HIGHWAYS—*Obstructions—Definition.*—Every unauthorized use

of a highway which renders it less safe and convenient for travelers is an obstruction.

5. SAME—*Liability of One Obstructing.*—Whoever, without special authority, materially obstructs a highway, or renders its use hazardous, is liable in an action by any one who sustains a special injury thereby.

6. NUISANCES—*Objects in Highways May Be.*—An object in a highway calculated to frighten a horse may be a nuisance, and is not distinguishable in law from an obstruction which a traveler drives against.

7. INSTRUCTIONS—*Directing Attention of the Jury to Particular Facts in Evidence Erroneous.*—An instruction which singles particular facts from others in evidence, and directs the attention of the jury to them is properly refused.

**Action for Personal Injuries.**—Trial in the Circuit Court of Marion County; the Hon. TRUMAN E. AMES, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the February term, 1899. Affirmed. Opinion filed September 5, 1899.

**Statement.**—This was an action by appellee to recover damages for personal injuries alleged to have been caused by the negligence of appellant.

The declaration contains three counts.

The first charges that appellant caused certain cinders to be conveyed to a point where its railroad is intersected by the public highway, and negligently caused the same to be unloaded upon the public highway adjacent to its track, which cinders were so negligently unloaded as to lay in a pile, and thereby create an object that would frighten horses; that her horse did frighten, ran away, threw her from the wagon and injured her, etc.

The second count charges that appellant negligently piled a car of fresh cinders in such manner that they would naturally cause a reasonably gentle horse passing that portion of the highway to take great fright; that her horse did frighten, etc.

The third count avers that there was then growing upon that portion of the highway, upon both sides of the beaten roadway adjoining appellant's track, and upon its right of way adjoining said highway, a large amount of tall weeds, and that the cinders were negligently so placed as to be hidden by the tall weeds, so as not to be visible to one

approaching on the highway until within a few feet of them, and that thereby the cinders became an object likely to frighten a reasonably gentle horse and cause the same to become unmanageable, and that her horse did frighten, etc.

The general issue was pleaded. Trial was by jury and a verdict for $4,191.

Motion for a new trial and a motion in arrest, overruled in their order, and judgment upon the verdict, from which judgment appellant appeals.

Appellee, Emma Griffin, in July, 1897, was living two and a quarter miles northeast of Patoka, which is a station on defendant's railroad. On the 22d of July she started to Patoka, about seven o'clock in the morning. She traveled in a light spring-wagon drawn by a three-year-old filly. Appellee had with her a babe two months old. The babe lay in her lap and rested on her left arm, while she drove the filly with her right hand. There was also in the wagon a basket of butter and a five gallon coal oil can. The route she traveled to Patoka led southward to a road that ran east and west and crossed the railroad of appellant. The road ran through a cut and was slightly descending toward the crossing. The highway was sixty-six feet wide, and the traveled part about ten or fifteen feet wide. The part of the highway on the south side of the beaten road had a growth of weeds upon it. Some days before July 22d—one witness states from ten to twenty days—appellant, in order to raise and ballast its track, including that portion where the road referred to crossed the railroad, unloaded carloads of cinders north and south of the crossing and on a part of the highway at the crossing. The cinders were thrown in ricks or ridges alongside the railroad track and extended twelve or eighteen inches above the ends of the ties. They extended from a point south of the traveled road twenty-five or thirty feet, to the cattle-guard, leaving a space of ten or fifteen feet of the beaten track of the highway for the passage of vehicles. Appellee drove toward the crossing, and when within about ten feet of the rails, the mare scared, gave a jump, and ran across the railroad track. When the

mare jumped appellee pushed the child between her knees, and got hold of the reins with both hands, but was not able to stop her. When 200 yards west of the crossing, the mare overturned the spring-wagon and threw appellee on the hard ground, and probably against the fence, and she received the injuries which are complained of in this suit.

WILLIAM H. GREEN, attorney for appellant; JAMES FEN-TRESS, of counsel.

W. F. BUNDY and FRANK F. NOLEMAN, attorneys for appellee.

MR. PRESIDING JUSTICE WORTHINGTON delivered the opinion of the court.

The amount of damages assessed is not questioned. The points mainly insisted upon by appellant are that appellee was not in the exercise of due care and caution, and that appellant was not guilty of negligence as charged. These were questions for the jury to decide.

· " The rule is that when there is evidence from which the jury could properly find their verdict, it will not be disturbed, although the evidence might, in the opinion of the court, justify a different verdict." T., W. & W. Co. v. Moore, 77 Ill. 219.

" It is only where there is no evidence upon which the finding of the jury can rest, or where the finding is against the clear weight of the evidence, that we are justified in setting their verdict aside." T., St. L. & K. C. R. R. Co. v. Cline, 31 Ill. App. 563.

Tested by these rules, it can not be said, after a careful examination of the evidence, that this verdict is not supported by testimony in the case. That there is force in appellant's argument, as a general proposition, that a woman with a babe two months old, driving a three-year-old filly, is not exercising ordinary care, may be conceded. But each case must be determined by the facts in the case. The evidence is positive and uncontradicted that appellee was an expert horse-woman, living on a farm; she had handled

horses from childhood. She had plowed, harrowed, driven reapers, mowers, buggies and wagons. She was well acquainted with the filly in question and had repeatedly driven her. The weight of the evidence is that the filly was gentle and safe to drive. At the time of the accident, when the animal shied at the cinders, about a length ahead of her and within ten feet of the crossing, appellee was driving with one hand and holding her babe on her lap with the other. She testifies that she immediately pushed the babe between her knees, and calling " whoa " to the horse, had the reins in both hands before the railroad track was reached, but was unable to check the mare. The jurors who heard the witnesses, and had before them in evidence all the circumstances of the case, were as able to pass upon the question of appellee's care and caution as we are, and by their verdict have found that she was in the exercise of due care and caution.

Was appellant guilty of negligence?

The evidence shows that appellant's agents were engaged in raising and ballasting the track with cinders, for some distance north of and including the crossing. For this purpose they had shoveled cinders from their cars along both sides of the track, and in so doing had thrown them on the highway, within three or four feet of its traveled track; that they were thrown in ridges about eighteen inches higher than the ties. Weeds were also along the highway at this point. The evidence warranted the jury in finding that the filly shied at the cinders, and in consequence thereof, ran away and caused the injury to appellee. It was in proof that other horses had been frightened at these cinders, which were darker than the adjacent soil, and were ricked up on the highway, eighteen inches above the ties, and only three or four feet from the beaten track, which was from ten to fifteen feet wide. One witness testifies that they were so close to the beaten track that the " fore wheel of his buggy ran into the edge of the cinders, and made a grating sound and his mare shied off from that."

It does not appear in evidence that it was necessary for

the use appellant intended making of the cinders that they should have been dumped on the highway at all. It was sixty-six feet wide, and the only object, as shown by witnesses for appellant, in dumping the cinders on the highway at the crossing, was to save trucking them from each side of the highway on to the railroad track at the crossing when they came to ballasting the track at the crossing. To save this extra expense, appellant took the risk of piling cinders on a crossing, leaving but a narrow passage-way for travel, which crossing, under the statute, it was required to keep in order.

" Hereafter, at all of the railroad crossings of highways and streets in this State, the several railroad corporations in this State shall construct and maintain said crossings and the approaches thereto, within their respective rights of way, so that at all times they shall be safe to persons and property." Starr & Curtis, Vol. 3, Chap. 114, Sec. 77.

It is said in C., B. & Q. R. R. Co. v. Payne, 59 Ill. 541, that a railroad company is chargeable with notice of all the perilous circumstances of a crossing constructed by itself. Cited in R., R. I. & St. L. R. R. Co. v. Hillmer, 72 Ill. 239. The word " approaches " means the embankments, or bridges, or grades on and adjoining the crossing, and on both sides of the railroad at the crossing which serve as passage-ways to the crossing. Bloomington v. Ill. Cent. R. R. Co., 154 Ill. 539.

If a railroad company is obliged by statute to construct and maintain approaches to crossings " so that at all times they shall be safe as to persons and property," the company is clearly liable for damages that ensue in consequence of obstructing by its agents a crossing so as to make it unsafe. At common law, " every unauthorized use of a highway which renders it less safe and convenient for travelers is an obstruction." Am. & Eng. Ency., Vol. 9, 412.

" It is an old and well settled rule that whoever, without special authority, materially obstructs a highway, or renders its use hazardous, is liable in an action by any one who sustains a special injury thereby. Thus one who digs a ditch or lays logs or other material upon it, though but for

temporary convenience, * * * or does anything which renders the highway less commodious or safe for the traveler, is liable for the consequence." Shearman & Redfield on Neg., Sec. 363.

An object in a highway calculated to frighten a horse may be a nuisance, and is not distinguishable in law from an obstruction which a traveler drives against. Clinton v. Howard, 42 Conn. 294; B. & O. S. W. R. R. Co. v. Faith, 71 Ill. App. 62. Affirmed in 175 Ill. 60.

If such is the common law liability, without question a railroad company is liable when it obstructs an approach that by law it is required to keep safe, by unnecessarily placing on it material which is likely to frighten horses, and which does, by such frightening, cause injury.

. There was then evidence tending to sustain the finding of the jury that the injury to appellee was caused by the negligence of appellant, as charged in the declaration. There being then evidence tending to sustain both the allegations of due care on the part of appellee and of negligence on the part of appellant, the instruction to find for appellant was properly refused.

But two instructions were given for appellee. We have examined them carefully and find no material error in them.

For appellant the following instructions were given:

" The court instructs the jury that to justify a verdict for the plaintiff, you must be satisfied, from the weight of affirmative evidence, that the cinders were negligently unloaded and in such a manner as was calculated to frighten horses in crossing the railroad, and unless you so believe, your verdict should be, not guilty."

" The court instructs the jury that unless you believe from the evidence that the plaintiff has shown, by a preponderance of the evidence, that she was exercising the care and caution of an ordinarily prudent woman at the time immediately preceding the accident, you should find the defendant not guilty."

" The defendant railroad company can not be found guilty in this case, unless you believe, from the evidence, that plaintiff was injured in consequence of the negligence of the defendant."

The following instruction, asked by appellant, was refused:

" If you believe from the evidence that the plaintiff was guilty of an extremely imprudent act in driving the three-year-old filly with a baby in her arms, and that her imprudence in driving over the railroad, under the circumstances, contributed to her injury, you should find the defendant not guilty."

This instruction was properly refused. It singled particular facts from other facts in evidence, and directed the attention of the jury to these facts. These facts were not in themselves controlling facts, but were to be weighed in connection with the evidence in the case. There was no error in refusing the instruction. Chesney v. Meadows et al., 90 Ill. 430; St. L., J. & S. R. R. Co. v. Kirby, 104 Ill. 348; Penn. Co. v. Stoelke, 104 Ill. 205; C., B. & Q. R. R. Co. v. Warner, 108 Ill. 551.

We find no material error in the admission or exclusion of evidence. Judgment affirmed.