## GARACI, Respondent, v. HILL O'MEARA CONSTRUCTION COMPANY, Appellant.

### St. Louis Court of Appeals, May 14, 1907.

1. **MASTER AND SERVANT: Safe Place to Work: Assumption of Risk.** A servant does not assume the risk of dangers which it is the duty of the master to exercise reasonable care to avoid, for such risks are not ordinarily incident to the employment; the risks assumed by the servant are those only which are incident to the employment and assumed by virtue of the contract of hire.

2. **——: ——: ——: Contributory Negligence.** The liability or non-liability of the master to the servant for dangerous conditions arising on account of the former's negligence is determined by the law relating to contributory negligence; the servant does not assume risks of dangers caused by the master's negligence.

3. ———: ———: Contributory Negligence: Glaring, Imminent Danger: "Necessary." A servant is guilty of contributory negligence such as would preclude a recovery for injuries received by the negligence of the master in providing an unsafe place or unsafe implements only by continuing in the service when the danger is glaring and imminent so as to threaten immediate injury; although certain precautions are necessary to prevent an accident, this does not necessarily mean that the danger is glaring and imminently threatening, and in an action by a servant for injuries inflicted by the negligence of his master, an instruction permitting recovery if "necessary" precautions were not taken to prevent an accident, was not error.

4. ———: ———: Knowledge of Danger: Contributory Negligence. A servant is not guilty of contributory negligence on the ground that he knew or had reasonable grounds to believe that an accident would happen in the manner the work was conducted, unless the danger to him was so apparent that an ordinarily prudent person would not undertake it.

5. ———: ———: ———: ———: Assumption of Risk. And although the servant knew that proper precaution had not been taken to prevent an accident, he did not assume the risk of an accident which ensued.

6. PRACTICE: Instruction: Abstract Proposition of Law. It is not error to refuse an instruction stating an abstract proposition of law, although it is correct as applied to the case, where it would tend to confuse the jury and where the court gave another instruction correctly defining the point at issue.

Appeal from St. Louis City Circuit Court.—*Hon. J. W. McElhinney*, Judge.

AFFIRMED.

*Collins & Chappell* for appellant.

In cases where the danger is so great, or apparent, that a man of ordinary intelligence and prudence would have observed it, then, as a matter of law, the man so observing, and not avoiding it, is guilty of contributory negligence. Bradley v. Railroad, 138 Mo. 293; Monahan v. Coal Co., 58 Mo. App. 68; Malone v. Morton, 84 Mo. 436; Waldhier v. Railroad, 87 Mo. 37; Thorpe v. Railroad, 89 Mo. 650; Soeder v. Railroad, 100 Mo. 673.

In its strictest sense, "necessary," in the law, is equivalent to "inevitable." 22 Am. and Eng. Ency. of Law ( 2 Ed.), p. 448; Lessee v. Railroad, 2 Mo. App. 115.

*A. R. Taylor* for respondent.

(1) The first point made by appellant in his brief is, that the plaintiff was injured by a peril ordinarily incident to the service in which he was engaged, and if this were true in fact the point would be good. But if, as plaintiff's evidence showed, there was no blocking or fastening of the derrick whilst it was being so turned, and if it was negligence to undertake to turn over the derrick under the circumstances without the blocking or fastening it to prevent its slipping, and plaintiff's evidence shows the master was doing this, then of course this is not a peril incident to the employment, and therefore, the plaintiff could not assume it. This law is too well settled in this State to admit of question. Blanton v. Dold, 109 Mo. 76; Settle v. Railroad, 127 Mo. 343; Pauck v. Dressed Beef Co., 159 Mo. 476; Curtis v. McNair, 173 Mo. 280; Cole v. Railroad, 183 Mo. 90. And this court, in an exhaustive opinion considering all the decided cases in this State and elsewhere, determines this question. Lee v. Railroad, 112 Mo. App. 400. (2) Where a servant in the progress of the service discovers that the master has been delinquent, and that some danger arises by reason of the master's negligence, yet if such danger is not so imminent and threatening that a prudent person would refuse to do the work, the servant is not, as a matter of law, negligent. This proposition is so well settled in our jurisdiction as to be at rest. Swadley v. Railroad, 18 Mo. 278; Pauck v. Dressed Beef Co., 159 Mo. 477; Wendler v. Furnishing Co., 165 Mo. 537; Minnier v. Railroad, 167 Mo. 115.

NORTONI, J.—The suit is for personal injuries inflicted upon the plaintiff, a laborer, while in the defendant's employ, by means of a heavy derrick falling

upon and breaking his leg. Plaintiff recovered in the court below and defendant appeals.

The material facts in proof are: defendant con-struction company was engaged in the prosecution of its business on the levee of the Mississippi river near the foot of Biddle street in the city of St. Louis. It owned a large derrick, which lay on the ground near the river, which derrick its foreman desired to over-turn. The derrick was a massive structure of great weight, about thirty feet in length; its side pieces or uprights were timbers about ten by twelve inches in diameter; it was ten or twelve feet wide at the bottom and about four feet wide at the top. There was a heavy crosspiece fastened across the bottom and one across the top of the upright timbers. These two crosspieces projected about twelve inches out on each side of the derrick proper, and there were numerous intermediate crosspieces thereon as well. The latter did not project, however. The derrick lay upon the river bank near to and parallel with the river, the lower or larger end being to the north and the top end, toward the south. The ground was frozen and slick and sloped toward the river. The defendant desired to overturn the derrick on its side to the east or toward the river, which in-volved raising it from the west side and tipping it down-grade toward the river. All of the evidence introduced tends to prove that the usual, customary and safe way to accomplish this was to drive stakes or crowbars at either end of the derrick and on the side thereof nearest the river to prevent it from slipping as the men raised it from the opposite side, and also to remove the earth at either end and dig holes where the projecting cross-pieces were so that in the operation of turning, the pro-truding ends of the two crosspieces mentioned would be beneath the surface of the ground, for to do so avoided their operating to raise the side timbers of the derrick from the earth, whereby the lift was rendered greater

and the possibilities of the derrick slipping more proba-
ble, and consequently more dangerous.

The defendant's foreman in charge called the plain-
tiff and probably ten other laborers to assist and di-
rected them to take hold along the west side of the
derrick lying flat on the ground, as it was, and to over-
turn it downgrade toward the river. Plaintiff had never
worked on or about a derrick and was unfamiliar with
it, as he was with the usual and customary manner of
overturning the same. He and his several witnesses say
that the defendant failed to provide stakes or crowbars
or other supports adjacent to the opposite side there-
of, and failed to remove the earth to permit the pro-
truding crosspieces to sink beneath the surface, as in-
dicated, and therefore, while the several men, under
the immediate direction of the foreman, were in the act
of lifting and overturning the same, the protruding
crosspieces slipped on the frozen incline of the levee
or river bank toward the river about the time they had
lifted it a little more than waist high, from which slip-
ping the derrick became unmanageable and fell back
upon this plaintiff, breaking his leg below the knee,
which injury necessitated the amputation of the limb,
which was done; that the slipping of the derrick was
occasioned by reason of the foreman's failure to provide
holes underneath the protruding crosspieces and his fail-
ure to provide stakes or other sufficient fastenings to
prevent slipping of the derrick on the frozen ground.

Defendant's witnesses, as well as one or two of
plaintiff's witnesses, testified that the usual, customary
and safe way to overturn the derrick was to dig holes
and drive stakes or crowbars against the side-rail, as
mentioned. Plaintiff himself, however, knew nothing of
this precaution, inasmuch as he had never been engaged
in a like undertaking nor about a derrick. The only
conflict in the evidence is, the defendant's foreman and
assistant foreman testified that both of these precau-

tions had been taken by them; that they had removed the earth beneath the ends of the protruding crosspieces and had driven crowbars into the ground as stakes to prevent the slipping; that the derrick in fact did not slip at all, but, on the contrary, the plaintiff's injury was occasioned by several of his fellow-employees quitting the lift or changing places at an inopportune moment, which rendered it impossible for the others to sustain their effort, in consequence of which the fall and his resulting injury occurred. The negligence declared upon in the petition is the order and direction by the defendant's foreman to plaintiff and others to overturn the derrick without first causing the same to be blocked or sufficiently fastened to prevent its slipping while being raised and overturned.

The court very properly refused to peremptorily direct a verdict for the defendant and submitted the cause to the jury on instructions, the first of which, given at the request of the plaintiff, is as follows:

"If the jury find from the evidence in this case that, on the 13th day of February, 1902, the defendant was operating the derrick and appliances mentioned in the evidence at or near the Levee and Biddle street, in the city of St. Louis,

"And if the jury find from the evidence that on said day the plaintiff was in the service of the defendant, as a laborer engaged in assisting in the work of raising the derrick, mentioned in the evidence, and that whilst so engaged said derrick fell upon and injured the plaintiff, as mentioned in the evidence,

"And if the jury find from the evidence that, as said derrick was situated, it was necessary that said derrick should be blocked or fastened to prevent it from slipping and injuring the plaintiff whilst it was being so raised,

"And if the jury find from the evidence that said derrick was not blocked or fastened whilst it was being raised, and that thereby said derrick was so caused to

fall and injure the plaintiff,

"And if the jury find from the evidence that defendant's foreman in charge of said work for defendant was present directing the manner of doing said work, and directed said work to be done without being blocked or fastened to prevent its falling and injuring the plaintiff,

"And if the jury find from the evidence that defendant's foreman, so in charge of said work, did not exercise ordinary care in so directing said work to be done, without having said derrick blocked or fastened, and thereby directly contributed to cause said derrick to fall upon and injure the plaintiff, as mentioned in the evidence,

"And if the jury find from the evidence that the plaintiff was exercising ordinary care at the time of his injury, then plaintiff is entitled to recover, although the jury should believe from the evidence that other servants of the defendant were negligent in and about the raising of said derrick."

1.   It is urged the employment of the word "necessary" in this instruction, directed the jury in effect that, even though the derrick would necessarily fall and injure the plaintiff, he was entitled to recover; that the instruction proceeds upon the theory that even though the injury was occasioned through an omission of duty on the part of the master, which necessarily and essentially entailed an injury, a recovery is authorized thereby, when in truth, in such circumstances, the risk is regarded as having been assumed by the servant and no recovery is permitted by the law.   Now on this question, the instruction must be examined with respect to the facts in proof and upon which it predicates.   When so examined, we ascertain, first, that the slipping of the derrick was occasioned by defendant neglecting to block or stake it, which was known by the defendant's foreman to be the usual and safe means of turning the same.

Therefore, under these circumstances, the defect which occasioned the injury, the necessity of blocking or staking to render the same reasonably secure from slipping, was in no sense a latent and hidden defect, not discoverable by the exercise of ordinary care on the part of the master, but, on the contrary, it was a defect discoverable by the exercise of that degree of care imposed by the law upon the master to the end of furnishing the servant a reasonably safe place and appliances. From this it appears certain that the risk, notwithstanding which it is said the instruction authorized a recovery, is not a risk ordinarily incident to the employment, for the reason it was one of those which the law imposed the duty upon the master to exercise reasonable care to obviate. [Lee v. Railway, 112 Mo. App. 372, 87 S. W. 12; Porter v. Railway, 71 Mo. 66; 20 Am. and Eng. Ency. Law (2 Ed.), 121-123.] It appears, therefore, that the doctrine of assumption of such risks as are ordinarily incident to the employment, is entirely beside the case at bar, and for the reason such question is not pertinent to the case, the criticism of the instructions must fail insofar as it predicates upon the principle mentioned.

In order to render the defendant the full benefit of the argument, however, it will be necessary to examine it as predicated upon the principle with respect to the assumption by the servant of such risks as arise, by virtue of the negligence of the master, which the servant is frequently adjudged to have assumed by continuing in and rendering service in the very face of danger. Now there is a well-defined rule of law on this subject which pervades many cases to the effect that, when the risk arises in the course of the employment, by the negligence of the master, and the servant, with full knowledge of the dangers, or when the risk and its dangers are obvious, continues in the service and is injured, in the one instance with full knowledge and appreciation, and in the other, constructively charged

with both knowledge and understanding of the dangers, he will be adjudged to have waived his right to compensation on account of the master's negligence and to have assumed the risk by voluntarily continuing to labor in such defective place, or with such appliances, so known and understood by him to be dangerous, or in such place or with such appliances, the dangers from which are obvious. [Fugler v. Bothe, 117 Mo. 475-501, 22 S. W. 1113; Keegan v. Kavanaugh, 62 Mo. 230; Conroy v. Vulcan Iron Works, 62 Mo. 35; Steinhauser v. Spraul, 127 Mo. 541, 28 S. W. 620, 30 S. W. 102; Mathias v. Stock Yards Co., 185 Mo. 434, 84 S. W. 69; Lee v. Railway, 112 Mo. 372; 1 Labatt, Master and Servant, sec. 247a; 4 Thompson on Negligence, secs. 4610-4612; 20 Am. and Eng. Ency. Law (2 Ed.), 122-123.] Now were this an unvarying rule in our law, no doubt the instruction quoted would be erroneous in authorizing a recovery notwithstanding the derrick, because of insufficient fastenings, would fall and inflict injury upon the plaintiff, for in such case, if it would necessarily fall and inflict injury, the risk and attendant danger would be obvious, and under such circumstances, the plaintiff deemed to have assumed the risk, and of course, the instruction having imposed the finding of this as an antecedent fact to the plaintiff's recovery, would be error, for such fact would inevitably preclude his right, and the subsequent direction as to the exercise of ordinary care by the plaintiff could not aid the matter. The rule of law, as stated above, does not seem to be adhered to by our Supreme Court, however, and under the Constitution, it is our duty to be guided and controlled by the last previous ruling of that court. It seems our Supreme Court inclines rather to treat and determine the question as one of contributory negligence. The view was announced in Settle v. Railway, 127 Mo. 336, 344, that the doctrine of non-liability in such case is more properly placed upon the ground of contributory negli-

gence than on that of assumed risk, and in consonance with this principle, the later cases seem to confine the doctrine of assumed risk to such risks only as are ordinarily incident to the employment, as will appear by reference to the case of Curtis y. McNair, 173 Mo. 270, 280, 73 S. W. 167, in which the court said: "The only risk the servant does assume is that which is liable to happen on account of the nature of the business when the master has used reasonable care to avoid such result." And in Cole v. Transit Co., 183 Mo. 81, 94, the court said: "The servant assumes the risk of the danger incident to the employment, but he never assumes the risk of the master's negligence." [See also the same doctrine asserted in Pauck v. St. Louis Dressed Beef Co., 159 Mo. 467, 478, 61 S. W. 806; Blanton v. Dold, 109 Mo. 64, 75-76, 18 S. W. 1149; Wendler v. House Furnishing Co., 165 Mo. 527, 537, 65 S. W. 737.] It appeared to us that the court adverted to the former rule as hereinbefore stated in Mathias v. Stock Yards Co., 185 Mo. 434, 84 S. W. 69, and we followed it, announcing our views in Lee v. Railway, 112 Mo. App. 372, but since that adjudication, the court of last resort has reiterated the ruling in the earlier cases, in Blundell v. Miller Elevator Co., 189 Mo. 552, 88 S. W. 103, in which case there seems to be certain categorical rules laid down on the subject, evidently for the guidance of the courts on this much confused question, and that adjudication certainly eliminates the doctrine of assumed risk with respect to all of that class of risks which arise by virtue of the master's negligence, and frequently adjudged to have been assumed by the servant continuing in the employment after knowing and understanding the danger and also those risks which are so obvious that any man would understand them to portend calamity. In other words, it in clear terms confines the doctrine of assumed risk to those risks only which are incident to the employment and assumed by virtue of the contract of

hire. The result is, the entire subject of the master's non-liability on account of abnormal conditions arising by the neglect of his duty, is relegated and to be ascertained and determined by the principles of law with respect to contributory negligence. Now in this state of the law, it becomes important to ascertain the rule with respect to contributory negligence, which positively precludes recovery in such circumstances as a matter of law. This question is well settled to the effect that it is only when the defect is so open, glaring and imminently dangerous as to threaten immediate danger, the plaintiff is precluded from recovery as a matter of law. [Waldhier v. Railway, 87 Mo. 37; Devlin v. Railway, 87 Mo. 543; Murphy v. Railway, 115 Mo. 111, 21 S. W. 862; Settle v. Railway, 127 Mo. 336, 30 S. W. 125; Swadley v. Railway, 118 Mo. 268, 24 S. W. 140; Pauck v. St. Louis Dressed Beef Co., 159 Mo. 467, 477, 61 S. W. 806; Wendler v. House Furn. Co., 165 Mo. 527, 537; Minnier v. Railway, 167 Mo. 99, 66 S. W. 1072; Cole v. Transit Co., 183 Mo. 81, 90, 81 S. W. 1138; Lee v. Railway, 112 Mo. App. 372, 406-407.] And of course, as correlative it is the established rule that if the situation is not so glaring and imminently dangerous as to threaten immediate injury, or if it is such that it would appear to a reasonably prudent person that he might continue in the services with safety to himself, by exercising care on his part, a recovery for the resulting injury is not barred as a matter of law under the doctrine of contributory negligence. The mere fact of the servant's knowledge that there is some danger, is not sufficient to defeat his right unless that knowledge discloses imminent and immediate danger which a reasonably prudent person should know could not be averted by the exercise of care. [Lee v. Railway, 112 Mo. App. 372; Swadley v. Railway, 118 Mo. 268, 278; Minnier v. Railway, 167 Mo. 99; Pauck v. St. Louis Dressed Beef Co., 159 Mo. 467; Soeder v. Railway, 100 Mo. 681.] And unless the danger is so

threatening and glaring, the matter of the plaintiff's con-
tributory negligence is always for the jury, under proper
directions from the court, imposing, of course, the condi-
tion that before he can recover, the jury must find him
to have been exercising ordinary care on his part. Now
this is precisely what was done in this instance. It is
true by employing the word "necessary" mentioned, the
instruction proceeds upon the theory that it was neces-
sary to block, stake or otherwise render the derrick
secure from slipping, and no doubt from the context in
which the word "necessary" is used, the instruction au-
thorized a recovery, even though it were obvious the
derrick would fall and inflict injury if it were not
blocked and staked. That without being secure, it was
likely to slip and inflict injury, was conceded by all the
proof. This concession, of itself, is not sufficient. It
must further appear in order to defeat the plaintiff's
right of recovery, as a matter of law, that the danger
was so glaring, imminent and threatening of immediate
injury that a man of ordinary prudence would not un-
dertake the task in the face of it. This was not con-
ceded in the proof nor do the instructions, when read
altogether, concede or permit a recovery, upon the jury
finding that the danger of inflicting injury upon the
plaintiff was so threatening and imminent that a man
of ordinary prudence would not have undertaken to as-
sist in overturning the derrick, for while the instruction
no doubt proceeds upon the theory that without fasten-
ings, the derrick would fall and inflict injury, it predi-
cates this upon the uncontroverted proof in the case and
at the same time, by a subsequent clause, it properly
refers the question of the plaintiff exercising ordinary
care for his own safety, to the jury, and in no event
could the jury have returned a verdict for the plaintiff
without first finding him to have been duly careful for
his own safety, for such was duly imposed by a subse-
quent clause, as a condition of his right to recover.

2. The court refused to instruct at the defendant's request, that if plaintiff knew "or had reasonable grounds to believe that such derrick was liable to slip and fall unless blocked, plaintiff cannot recover." This refusal is assigned as error. In consonance with the doctrine that knowledge of the defect alone is not sufficient to defeat the plaintiff's right, and that he is precluded by his negligence contributing to the injury only when the situation is such that a person of ordinary prudence would not expose himself to the risk. This instruction was properly refused. Granting all defendant requested, even though plaintiff did know, or had reasonable grounds to believe, the derrick was liable to slip and fall, still plaintiff was entitled to recover, unless the absence of such blocking or fastening in turning it over rendered the task one of such apparent danger that an ordinarily prudent person, in the exercise of care for his own safety, would not have undertaken it. Such is the real test on the question of contributory negligence, as pointed out in Bradley v. Railway, 138 Mo. 293, 310, 39 S. W. 736. And this standard—what would a reasonably prudent person have done under the circumstances—was entirely omitted from the instruction as requested. It is certain if plaintiff had reasonable grounds to believe, such as would lead an ordinarily prudent person to believe, that although not fastened, the derrick could be turned without injury, by the exercise of even a high degree of care, skill and caution on his part, he is still entitled to recover for his hurt. [Huhn v. Railway, 92 Mo. 440, 447, 4 S. W. 937; Stoddard v. Railway, 65 Mo. 514.]

3. The defendant requested and the court refused to instruct that if "plaintiff saw and knew that such derrick was not blocked, and knowing it was not blocked, took hold and undertook to raise such derrick, and because it was not blocked, it fell and injured him, then he

himself assumed the risk." This refusal is also assigned as error. This request attempts to present the theory of the law with respect to the assumption of such risks as arise by the master's negligence and are said to be assumed when the servant, acting with full knowledge of the defect and understanding the dangers, continues in the service, or the dangers are obvious. Now, under that rule, it is not sufficient alone for the jury to find that the servant knew of the defective condition, but it must find that he understood and appreciated the dangers thereof as well. [Waldhier v. Railway, 87 Mo. 37-46; Lee v. Railway, 112 Mo. App. 372.] Or that the danger was obvious to any man, whether servant or master. [Keegan v. Kavanaugh, 62 Mo. 232; Fugler v. Bothe, 117 Mo. 475, 501, 22 S. W. 1113.] The instruction as requested, does not require the jury to find as a condition of defendant's non-liability, either that the plaintiff understood and appreciated the dangers nor that the dangers of the undertaking were obvious. Therefore, under the theory of the law on which it was requested, the court very properly refused it as being insufficient to declare the rule absolving liability.

As said above, the entire doctrine that the servant assumes risks other than those ordinarily incident to the employment, and arising by the master's negligence, is eliminated from the law of master and servant in this state by the adjudication in Blundell v. Miller Elev. Co., 189 Mo. 552, 88 S. W. 103, as pointed out supra, and under that authority, the instruction would be properly refused had it contained the elements rendering it sufficient, as above suggested.

4. The defendant requested and the court refused the following instruction:

"The court instructs the jury that the defendant was not an insurer of its employees against the danger of its appliances, but in the supplying and operation of said appliances it was only required to furnish such ap-

pliances as were reasonably suitable for the work to be done, and to operate same in the manner suitable for such work; if, therefore, the jury believe from the evidence that the defendant supplied and operated the same kind of derrick and operated same in the same manner ordinarily supplied and operated by reasonable and prudent men, then the defendant is not liable for negligence in providing and operating said derrick."

Error is assigned on this refusal. As abstract propositions of law, in a general way, there seems to be no serious objection to the declaration as requested. The court no doubt refused it because it did not appear to be predicated upon the facts in proof. Now, in the first instance, it seems to be drafted upon the theory there was some complaint of negligence in the character of the derrick supplied and the manner of its operation, and therefore, if it was the same kind of derrick supplied and operated in the same manner as such derrick "ordinarily supplied and operated by reasonable and prudent men, then the defendant is not liable for negligence in providing and operating such derrick." From the entire record, there appears to be no charge or intimation for that matter, of negligence in respect to the character of the derrick furnished or supplied, and therefore this feature of the instruction was entirely irrelevant to the charge of negligence in the petition and the facts in proof. And as to its operation, there was no proof that the derrick was being operated, within the usual meaning of that term. The fact was, it was lying on the ground, in no sense in operation. It was idle and was merely being turned over under the direction of the foreman, mayhap for the purpose of arranging it for operation, or it may have been to remove it out of the vicinity of other work for convenience. The court was justified in refusing the instruction for the reason, as drafted, it tended rather to confuse than to guide the jury on the facts in proof. So much as was

pertinent to the allegations, and the facts in evidence, was given by the court in defendant's instruction No. 3, in the following language:

"The court instructs the jury that unless you are satisfied by the preponderance or greater weight of the evidence in this case that the derrick, mentioned and described in evidence, slipped forward when the defendant and its employees raised one side of said derrick from the ground, and that said derrick slipped forward for the reason that it was not blocked or fastened to prevent it from slipping or giving way and falling while being so raised, and that defendant's foreman was negligent in failing to so block or fasten the same, your verdict must be for the defendant."

And the refusal of the instruction mentioned under the circumstances was certainly not error materially affecting the merits of the case.

The issues were fully and succinctly presented to the jury in the instructions given. Finding no reversible error in the record, the judgment will be affirmed. It is so ordered. *Bland, P. J.*, and *Goode, J.*, concur.